We'll get started with the first case, case number 22-1076, United States v. Eddington. Counsel? Mr. Fishman? Thank you, Your Honor. May it please the Court, Counsel Robert Fishman on behalf of Mr. Eddington, the appellant. The Court is aware this appeal concerns whether the District Court erred in imposing a four-level enhancement in calculating Mr. Eddington's advisory guidelines sentencing grange on grounds that he committed another felony offense in connection with his illegal possession of ammunition, the offense charged in this case. The District Court said that the four-level offense applied for two reasons. Number one, Mr. Eddington was guilty of second-degree assault under Colorado law, and in the alternative, he was guilty of being a felon in possession of a weapon under Colorado law. It is our position that the Court erred as a legal matter on both grounds and that this case should be reversed and remanded for resentencing. On the first ground, second-degree assault, that, of course, implicates in this case the question of self-defense, which in turn implicates the doctrine of mutual combat. The District Court ruled that Mr. Eddington was engaged in mutual combat and therefore could not avail himself of self-defense. The central question of whether mutual combat applies under Colorado law is whether there is a clear-cut or definitive agreement to engage in combat. And that Between what parties is there a need for this agreement? Well, all of the cases addressing it involve an agreement between the combatants, which to me seems to make some sense. The idea is you have mutual combat. It's not joint combat. Right. So in our case, we have to have, in your view, an agreement between the defendant and which of these other individuals? Mr. Fernandez. Mr. Fernandez, okay. Correct. That question, along with any other question you want to think about when it comes to a definitive or clear-cut agreement, are not questions that the District Court wrestled with. Counsel, may I ask you, just to clarify your argument, is it your position that the District Court did not make a finding on whether there was an agreement in this case? Yeah, that is my position. And as I was just about to say, the District Court said nothing on this subject whatsoever, did not cite any Colorado cases on mutual combat, never referenced the requirement of a clear-cut or definitive agreement, and certainly never made a factual finding that there was an agreement, definitive or otherwise, between my client and Mr. Fernandez. What the District Court did find, and I would not claim that the finding is clearly erroneous, is that, this is at page 63 through 64 of the sentencing transcript, is that Mr. Eddington knew that a confrontation might take place and he didn't do anything to stop it. Well, more than that, didn't the court actually say that Eddington knew there was a Well, I think that you have to understand that comment as what he knew after the initial aggression took place. I mean, you don't know there's a... No, I guess what I'm saying to you is, maybe the District Court seemed to think it knew what the law was about what the definition of mutual combat was, and it seemed to think that this finding it made, which was there was a shootout between his friends and someone else, was sufficient. Now, that's wrong, but isn't that essentially what the District Court said at the very end, that this was the law? Sure, yes. I think that's exactly right. In answer to your question, Judge Rossman, there is no finding of an agreement. I think you're right. The judge, as I read it, is thinking, when you willfully engage in an altercation, that's  You knew what was going on. You went out and joined the fight. And I'll concede that I think that's a reasonable notion. It's a reasonable legal rule. And I don't know, but it wouldn't surprise me at all if the law is consistent with that view in other states. But it quite clearly is not the law in Colorado. And but for the mutual combat exception, you would agree that the District Court concluded that self-defense was available here, right? There's no question about that. I mean, repeatedly he says, I agree with everything you've said, defense counsel, about him fearing for his life and all the rest of it. So absolutely. I think if the court concludes that mutual combat does not apply in this case, second-degree assault cannot be the premise for a four-level increase. I have one other question before. Please. It looks like you're going to move on, but I have one other question about this. Could you speak to the government's understanding of the Colorado law here, that there's sort of a distinction drawn between an agreement and a, quote-unquote, more definite agreement? Yeah, sure. I think, well, as I understand it, the government's, the government is not, is not cutting the law that way. The government is saying, you really only need a definitive agreement when you have a follow-up to some act of initial aggression, and here you don't have that. You just have sort of this immediate confrontation and shots fired, and so you don't need an agreement in those circumstances. And Kaufman, the most recent Colorado Supreme Court case on the subject, controlling, of course, on this court, I think is just clear as day on this and dispositive. At page 562, the court says, under Colorado law, you need a definite or clear-cut agreement to engage in mutual combat. And then the court says, quote, the initial act of aggression occurred before any possible agreement could be inferred. Therefore, it was error to instruct on mutual combat. So, you know, more from 1899 is a little unclear to me. It doesn't speak about an agreement at all. I think the most recent Colorado Supreme Court case on the subject is absolutely clear. You need a definitive agreement prior to an initial act of aggression, and, I mean, you could qualify that, I suppose, and say, assuming the initial act of aggression is the thing that the defendant is claiming self-defense to. And the government here argues, don't they, that there was an agreement, but between thinking maybe that the court inferred an agreement between, who, Williams and Fernandez? Well, I mean, at 13 through 14 of their answer brief, they have a whole list of facts that they say could support the inference. Frankly, I think most of those facts are just descriptive of the incident. I don't see what relevance they have to the question of an agreement. But the broader and more important point is, even if they could support the inference of an agreement, that is not an inference that the district court drew. And of course, it would be improper for this court to do so. Well, and the agreement I just described didn't involve the defendant. I mean, I don't, the court- And you need to have an agreement involving the defendant, don't you? Yeah, sure. Right. The defendant and the victim, that's mutuality. If there's no additional questions on second degree assault, I'll move on to possession. There are, of course, two components to this, a procedural and a substantive one. The procedural one concerns the standard of review and the question of waiver. Begay is our case on plain error. It clearly holds that when you are confronted with an error at sentencing that you could not have anticipated, you are relieved of the obligation to object, and your failure to object will not trigger plain error review on appeal. That is the circumstances of this case, if ever those circumstances existed. And- Well, I mean, you were still, or counsel before defendant was still in the courtroom when the court went off on this state possession of firearms. Yes. That is true. And in theory, there was- And that's when you lunge up and say, I object your honor. Right. And to her credit, defense counsel did object to relying on possession as a grounds for the enhancement. And also to her credit, I think she did the best she could trying to articulate why that was a mistake. She didn't have comment 14C at the ready to argue about it. You know, it can't be expected to be an encyclopedia of- So there was an objection? There was an objection. It was not- Because I thought you were going into plain error. Okay. Well, because the government says, sure, there was an objection, but it's not the one that Mr. Eddington is arguing about on appeal. And, you know, also to counsel's credit, she's- I mean, we don't need to sort of- I don't need to sort of read this into the record. She says, your honor, nobody has briefed this. I've never heard anything about this before in the case. I'm not prepared to argue this. And if you're going to rely on it, I should have the opportunity to brief it and look into it. And the court did not apparently think that was necessary. The district court felt confident making this ruling without the input of counsel. And that's an additional reason why plain error makes no sense. The purpose behind plain error would not be served in circumstances like this. United States versus talk- I don't have the site. I can certainly provide it. It's TALK. Does talk about limitations on this rule of beguet, but it's a limitation that applies to routine matters that kind of arise in any sentencing hearing, severity of the offense, criminal history, things of that nature. And this just clearly- this is a novel, entirely unprecedented sort of legal theory that counsel was not required to articulate a precise objection to in our view. So the standard should be abuse of discretion because ultimately this- Can you move on? Yeah, yeah. I have some questions about the in connection with part of it. Sure. Can you tell me what your argument is essentially about why this was not in connection with the other state law? So under 10th Circuit precedent that in order to be in connection with another felony offense, number one, you have to- it has to facilitate that offense. And under precedent, that means embolden, make it easier. And I cannot figure out a way to explain how possessing a gun makes it easier to possess ammunition. The government has never argued a theory of facilitation. The district court said nothing about the subject. And there are no cases anywhere that attempt to do so either. So my argument would be you really have a single sort of act of offense conduct. It's possessing something illegally. And there's two components to the thing you're possessing. The gun and the ammunition needed to use it. The possession of one does not facilitate or make the other easier. It's much more- Facilitate, excuse me, the use but not the possession. Right. Right. So that's facilitation. I think you also have just sort of a threshold problem of this question of another offense. Comment 14C specifically says you can receive this enhancement when you are guilty of another offense other than the firearms possession offense in question. And so there again I would argue this is all just the same offense. There is no other offense. The comment doesn't speak- Well, you just said there were different offenses. Possession of a firearm is the state offense that the court raised. And the charge here is possession of- Right. But the offense conduct is identical. It's the same time. It's the same gun. It's the same everything. The fact that there's ammunition in the gun doesn't make it another offense in terms of offense conduct. And when the comments say you need something other than the offense, it doesn't say other than the charged offense. It doesn't say offense of conviction, right? It doesn't say offense of conviction or the charged offense.  And again- Meaning you would say you don't even get over the threshold. It's not another offense. So you don't get to the in connection with it. You don't even have to get to the facility. Or you can go the other way and say you don't have to decide whether it's another offense. Six of one doesn't have to be the other. Again, no cases holding that you can do what the district court did here. I couldn't even find any cases where the government made the claim. I couldn't find any cases, including, incidentally, this case, right? This is the judge. I'd like to reserve my 34 seconds if I may. Certainly. Thank you. May it please the court. Bishop Prewell on behalf of the United States. I want to start with, I guess, the mutual combatant issue. And I think I'll talk about what it seems like the court was particularly interested in, whether Eddington had joined it. I understood the argument in the briefing to be really about whether there was any agreement at all, not whether Eddington was a party to it. But I think there are three responses to that. First of all, the Moore case, which Mr. Eddington doesn't discuss in his opening brief or his reply brief, I think is the most on point here. It does talk about mutual combatants. And the Coffman case referred to it as good law. And in Moore, you basically have a bartender thinking that a patron was in the night before and was acting funny. Turns out it wasn't that patron. But he asked, what was the matter? And Moore says, in response, come out, you SOB, and I'll show you what's the matter. And then the other person, the bartender, doesn't say anything. He simply follows him out. Gunfight ensues. And that was considered mutual and combatant. He didn't have to say, I agree to come out to fight you. But doesn't Coffman talk about agreement, making it sound like it needs to be more than what you've just described? No, I don't think it does. Because he's talking about, again, when there was an initial aggression, then it's a different situation, which is what the court in Coffman says occurred there, that there was an initial aggression. And so this is more of a continuation. Wasn't there an initial aggression here where we had words or signs or whatever exchanged in the liquor store between two of these individuals, not the defendant? I think if you look at Moore and Eckhart and Coffman, when they're talking about an initial aggression, they're actually talking about some sort of physical violence ahead of time. So in Eckhart, you have the shoving. In Coffman, you have them jumping out of their cars. There's some cursing at one another, but there's no sort of, let's take this outside. In Moore, there's a, let's take this outside before there's any physical violence. And then the guy comes outside, and they start shooting at each other. Moore, that's considered mutual combatant. There's no sort of initial aggression in terms of physical violence. So when I think you look at the facts, that's how they're talking about initial aggression. Counsel, you are arguing that we're on clear error review here, right? On the mutual combatant? Yeah. Yeah, I think so. Yeah. I believe the challenge is a sufficiency challenge. Well, I'm not so sure about that, and I wanted to ask you about it. Do you think the district court understood what Colorado law required here? I do think the district court did. I think the court could take judicial notice that this particular judge is the longest-serving solicitor general in Colorado's history. But I do think he did. I don't know if that's a racist or local issue, sir. No, but I think if you look at the findings he made here, that he had enough for— But the findings—so I'm sorry to interrupt you. Here's what I'm concerned about. His findings seem to be responsive to a standard other than what Colorado law requires. He's making a finding about knowledge, knew of the fight, and didn't stop it. He's not making findings that go to a clear-cut agreement, which is what the Colorado cases require. And I think that's in part because the cases he relies on that the government then disclaims in your answer brief are the cases that were cited to him in the PSR objection litigation. Sure. So I don't have the confidence reading this record, and I'd like you to explain to me why I'm wrong, that this district court understood what Colorado law required. Yeah, so I think—and again, I guess regardless of whether the district court understood it or not, I think this court can affirm on any grounds. But I think the finding that the court makes at page 63 of Volume 4 of the record, where it makes a preponderance finding that Eddington knew some sort of confrontation was going to happen and suggested to Williams that he would assist, at the very least satisfies aiding and abetting. Colorado aiding and abetting law is the exact same as federal aiding and abetting law, 18-1-603. And so Eddington, by agreeing to assist at the very least, stands in Williams' shoes when it comes to self-defense and mutual combat. And so when he— This is not an argument you made before, right? This does not sound familiar, this aiding and abetting track. So I think part of that is I did not understand that they were challenging Eddington's relationship with the agreement. I understood it as there being no agreement whatsoever between even Williams and Fernandez. But again, the court can affirm on any grounds in the record, and this would still—if you sent it back, this is still going to be, there's an assault here, Mr. Eddington stands in Mr. Williams' shoes when it comes to this because he agreed to support, and the district court made the necessary finding for that. Counsel, I want—I'm sorry, I have one other question. What really concerns me here is that there is, both by the government and the district court, what seems to be a really heavy reliance on the fact that Mr. Eddington was affiliated with a gang. And that that is somehow, in this case, both serving as a proxy for an agreement required by Colorado law, and somehow maybe animating the prosecution's assumptions about what's seen on the video. And I just want to make sure I understand how we're supposed to use that fact, the fact of gang affiliation here. So that is not what we're relying on. The Cuevas court certainly looked at the fact that there was a gang history and allowed to use that for a group, sort of a group agreement there. And I think that Cuevas does support the notion that you can have sort of a group agreement. But we are not relying on the fact that there was some gang history, other than, you know, Mr. Eddington says that Fernandez was gangbanging, which I interpret—I think the district court could fairly interpret as, you know, we're starting to talk about let's have a fight here. And then Mr. Fernandez was, again, in Eddington's words, pressing them, which Mr. Eddington then didn't dispute meant it's on. Well, he didn't say that. The officer who was interviewing him said that. Sure, he didn't dispute that, but he did say that Mr. Fernandez was pressing them. And then the officer said, is that what that meant? But even if you simply had he's pressing us, that that's sort of what is he pressing you about? And then as Mr. Fernandez leaves, Mr. Williams turns to Mr. Eddington and says, again, Eddington's words, taps him and says, bro, is you on this? And then Mr. Eddington puts his sword back, follows him outside. And I think if you look at that video, I'm not sure how this could be interpreted as anything else. Then everybody knew we're having a gunfight here. When you look at Mr. Fernandez doesn't go get in his car and leave. He takes a defensive position back there. And then Mr. Eddington and Mr. Williams, Mr. Epperson getting out of the car, circle Mr. Fernandez. And if you look at it, and Mr. Eddington here, he doesn't hide inside the liquor store. He's getting behind the door where he's going to be protected from gunfire but can see Mr. Fernandez. This all indicates that he knows we've decided there's going to be a gunfight. Fernandez hasn't left because he knows there's going to be a gunfight. And I am joining in that particular gunfight. And at that point, I think there's enough for there to be an implied agreement. So where is the implied agreement? Between who? I think there's an agreement. There's certainly agreement between Williams and Fernandez that Mr. Eddington has agreed to aid and abet that combat. Don't you have to have the defendant involved in the agreement? Or he can aid and abet a crime. So you really seem more and more to rely on aiding and abetting then? I think that would probably be the stronger theory. But I certainly think there are enough facts here. The challenge is the sufficiency of an agreement between Mr. Eddington joining the agreement that, based on the positioning he takes in terms of getting the circling, knowing that Mr. Fernandez is not going to take off. Do we have any Colorado law that talks about joining an agreement to satisfy Kaufman? I don't think there's anything specific on that other than you have the Cuevas case, which is really about a group. And there's no discussion in Cuevas about whether that everybody in the group sort of signed on the dotted line here. I don't think we're talking about a contractual agreement in that sense. It's more of, again, like Moore, did you come outside? I mean, even in that one, Eddington certainly did what the bartender in Moore did. He walked outside with them after, I think it's fair to say, the court found that there was a, we're going to have a fight, there's a challenge, like Moore issued, then he walks outside. I think that is enough under Moore to find a mutual agreement under Colorado law. Well, you've made a lot of arguments here today, but the bottom line is the district court didn't make any of those findings. It didn't make any finding that there was a clear-cut agreement between anyone, because the district court didn't know what the law was. And it did not make a clear-cut finding, most certainly, that he aided and abetted in this agreement. I don't think that's correct, Your Honor. It didn't use the word aiding and abetting, but if you look at Volume 4. It didn't even use the word agreement. I mean, it didn't even seem to know there needed to be an agreement. The court did not. It said at Volume 4, page 63, Eddington knew some sort of confrontation was going on, made this by profoundness finding, and suggested to Williams that he would assist. That is aiding and abetting language, that he is going to assist with that confrontation. He knew that there was going to be a confrontation going on? Is it evidence, clear-cut evidence, that he was part of this agreement? That he was going to assist with the confrontation. At least tacitly. I mean, it's just very non-responsive to the requirements of Colorado law. I think the court certainly talked about it more in terms of causation, which I think is what initial aggressor and the combat by agreement are really getting at, is did you cause this confrontation that you're now asking self-defense to occur on? I think there are findings at 36 through 37 where the court says he knew what was going on, went out with a gun, joined in combat. Page 45 where the court says he's a mutual companion, he says he was in at the start and knew what was going on. And page 53 and 54, involved at the start and part of the people who started the fight entered knowing what was going on. And then the court said at page 65, it would be different if Eddington hadn't been involved before the shootout, but he was. Unless the court has further questions on mutual combat, no, I think I should, with four minutes left, turn to the other issue. Very briefly, I want to say I do believe it's plain error review. I don't think Begay is any longer good law after the Atencio footnote, overruling the case law in which it was relying on. I think when you feel you don't have notice, you have to object to the lack of notice and ask for a continuance. Isn't that exactly what happened here? I don't think she could have been more specific about how she objected. I'm not prepared to deal with this. This is Your Honor's idea. I need more time. I would like to brief it. I don't know how you could object more strenuously. I think she asked for additional briefing. I don't think she objected. I understand. But if the court disagrees, I do think that we went on an error standard regardless, if it's simply de novo review error. And I think certainly the gun and the ammo, both of them facilitate one another, whichever way you want to look at which is the offense facilitating the other offense. This is no different than drugs. For Mr. Eddington, guns and ammo are contraband. And there are loads of cases where a gun certainly facilitates you having contraband because you can't go to the police if somebody tries to take it. How does possessing ammunition facilitate your possessing a gun? It would facilitate your using the gun. I think in the same way that having a gun facilitates trafficking drugs. It helps you use your gun and it helps you protect that gun that you can't have. It's just like possessing drugs, having a gun, because you can't go to the police again, the fact that you have the gun is the way you're going to protect those drugs. Likewise, having a loaded gun, one that you can actually use, is going to facilitate you protecting that gun that's contraband for you. I don't think there's a difference when you're talking about a felon who can't have a gun between protecting that gun or protecting drugs. So possession of ammunition facilitates or somehow makes easier, which is the definition essentially, it facilitates possession of a gun. How does it make it easier? How does it facilitate? Because it allows you to protect what is for you contraband. Is there any case law anywhere making that connection? Not in this particular context. I don't think it's any different, even though there's loads of case law and I can provide some if the court would like, that a gun facilitates drug possession. That's not this case. That's simply not this case. You're correct, but why does it facilitate drug possession? Because drugs are contraband and you can't go to the police to defend them. For Mr. Eddington, a firearm or ammunition are contraband, just like drugs. The reasoning is no different. But I agree with you, it's not a direct case, but I don't think the reasoning is any different when you're dealing with something that's contraband-free. And then finally, I think if you look at the amendment to Note 14c that occurred in 2006, I mean, it did change the language from before it was excluding offenses, was offenses other than explosives or firearms possession or trafficking offenses, just generally. It changed it to other than the explosive or firearm offense or trafficking offense. Not that it couldn't be ammunition or guns, but that it specifically couldn't be the offense you had been charged for. So I would agree that if, in fact, he had been charged with felon in possession of a firearm, we could not use that same offense and simply say it's a state offense and try to use it. But here we actually have a different offense in terms of it being ammunition. I think if you look at the Marufo case, the English case that they have from the Eighth Circuit, all these cases when they're talking about this sort of double-carrying notion are looking at that extremely narrowly. There can't be basically any difference between the offenses. In Marufo, it's I'm possessing this firearm, and they find it's enough that the fact that you tampered with that exact same firearm, that was enough for it not to be sort of double-carrying or impermissible. That was sufficient difference. Here we're talking about possession of ammunition. That is something that is different than possession of the firearm. So I don't think any of that case law prevents us from using them in both contexts. And certainly, there's certainly a reason for it. I mean, the firearms and the ammunition are certainly more dangerous together than they are separate. I see I'm out of time. Unless the Court would have any other questions, we'd ask the Court to adjourn. Thank you. Appreciate it. Thank you. Very quickly, I think almost all of the Court's questions on mutual combatant can be sort of mooted for the following reason. Volume 1, page 69, the government in its sentencing papers acknowledges the gunfight stopped. It ended. That's when Eddington makes a run for it, along with some innocent bystander. The district court made the same observation at page 65 to 66 of the sentencing hearing. He says, for all Eddington knew, Fernandez was gone. So whatever agreement there might have been between whatever parties, the law and the Court's findings are clear that the initial aggression ends. At that point, Eddington runs in the opposite direction of Fernandez. And there's absolutely nothing in the record that could support any sort of agreement to engage in further combat after the initial combat ended. Thank you. Thank you, counsel. We appreciate both of your arguments have been very helpful, and the case will be submitted. Counsel are excused.